IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:16-CR-318 |
| vs. | |
| LAFI JAFARI, and MARYLOU GRUTTEMEYER, | ORDER |
| Defendants. | |

    The defendants, Lafi Jafari and Marylou Gruttemeyer, have objected (filing 85, filing 87) to the Magistrate Judge's Findings and Recommendation and Order (filing 80) recommending that the defendants' Motions to Suppress (filing 38; filing 44), Motions to Dismiss Count 7 of the Indictment (filing 40; filing 42), Motions to Dismiss for Outrageous Government Conduct (filing 36; filing 43), and Gruttemeyer's Motion to Sever (filing 34), be denied. The Court has conducted a *de novo* review of the motions pursuant to 28 U.S.C. § 636(b)(1). The Court concurs in the Magistrate Judge's factual findings, analysis, and conclusions of law. The Court therefore finds the defendants' objections to be without merit, and will adopt the Magistrate Judge's findings and recommendation.

    As support for their objections, the defendants, generally, rely on two cases: *United States v. Brooks*, 215 F.3d 842 (8th Cir. 2000) and *United States v. Dyke*, 718 F.3d 1282 (10th Cir. 2013). Those cases, however, are distinguishable from the facts at issue here.

    For instance, the defendants cite *Brooks* to suggest that the government's "coercive tactics" amounted to outrageous government conduct. *See* filing 86 at 17. But that reliance is misplaced. Indeed, *Brooks* is an

entrapment case, not an outrageous government conduct case. *See id.* And although entrapment and outrageous government conduct are related, they are not the same. In particular, the defense of entrapment focuses on the predisposition of the *defendant* to commit the crime, whereas the defense of outrageous government conduct focuses on the *government's* actions. *United States v. Hunt,* 171 F.3d 1192, 1195 (8th Cir. 1999).

And outrageous government conduct warrants dismissal only when the conduct "falls within the narrow band of the most intolerable government conduct." *United States v. Bugh,* 701 F.3d 888, 894 (8th Cir. 2012). That is, the government's conduct "must shock the conscience of the court." *United States v. King,* 351 F.3d 859, 867 (8th Cir. 2003). But because *Brooks* is not an outrageous government conduct case, it does not address any of these principles. Stated another way, *Brooks* does not discuss how, if at all, the government's actions "shock[ed] the conscience" of the court. *Id.* Nor does it address whether the government's conduct fell "within the narrow band of the most intolerable government conduct" warranting dismissal. *See Bugh,* 701 F.3d at 894.

And even if it did, the facts at issue in *Brooks* are distinguishable from those at issue here. In *Brooks*, a confidential informant for the government sold the defendant drugs. *Brooks,* 215 F.3d at 847. The confidential informant then induced the defendant to sell those same drugs back to a different government agent. *Id.* In order to convince the defendant to sell the drugs, the informant resorted to "accosting [the defendant] time and again demanding that [the defendant] return some heroin[.]" *Id.* The informant even threatened to cut off the defendant's heroin supply if he failed to give a portion of the drugs back. *Id.* That level of government pressure, the Court of Appeals said, is impermissible. *Id.*

2

But here, as the Magistrate Judge correctly points out, the government did not pressure the defendants into paying the government's informant. To the contrary, the defendants provided the informant with envelopes of cash on at least three occasions *before* the government ever encouraged the informant to ask the defendants for money. Filing 74 at 12, 14, 22-23, 139; *see also* filing 80 at 11. And even once the government did take a more "active" role in the informant's interactions with the defendants, the government's conduct still did not rise to the level of outrageous government conduct.[1] Filing 74 at 139.

That brings the Court to the second case relied on by the defendants, *Dyke*, 718 F.3d 1282. But the Tenth Circuit's decision in *Dyke* does not help the defendant either. In fact, *Dyke* actually undermines the defendants' claim of outrageous government conduct. Specifically, the Court of Appeals concluded that buying the defendants beer, offering to exchange items for contraband, claiming they needed the defendants' expertise to expand their own criminal enterprise, and providing the defendants with drugs and equipment, were neither "inherently impermissible" nor outrageous government conduct. *Id.* And the Court of Appeals bolstered that conclusion by noting that it had previously upheld government sting operations involving conduct equally, if not more, oppressive. *See e.g., United States v. Pedraza*, 27 F.3d 1515, 1517-19 (10th Cir. 1994) (government pushed a plan to smuggle 707 kilograms of cocaine); *United States v. Sneed*, 34 F.3d 1570, 1574-78 (10th Cir. 1994) (government set up scheme to manipulate penny stock market, netting $900,000); *United States v. Warren*, 747 F.2d 1339,

---

[1] The Court notes, however, that the issue of entrapment was not raised in the defendants' various motions. As such, this Memorandum and Order does not preclude the defendants from asserting that defense at a later juncture.

1343 (10th Cir. 1984) (government "staged phony accidents, prepared false accident reports and traffic tickets, and entered pleas of guilty to the falsified charges" to convince defendant to falsify medical reports).

To that end, if staging phony accidents, preparing false accident reports, entering pleas of guilty to the falsified charges, Warren, 747 F.2d at 1343, providing the defendants with drugs and equipment, Dyke, 718 F.3d at 1290, and setting up various fraudulent schemes, Sneed, 34 F.3d at 1574-78, does not amount to outrageous government conduct, neither does the government's conduct in this case. Indeed, the bulk of the government's involvement here included directing its informant to "do acts that [] might be favorable in Ms. Gruttemeyer's eyes and then request money," filing 74 at 139, asking the informant to set up various meetings with the defendants, directing the informant to tell the defendants various misstatements, and recording the informant's interactions with the defendants. See filing 74 at 29-37, 139. That conduct is "pretty prosaic stuff for undercover sting operations." Dyke, 718 F.3d at 1289-90; see also Bugh, 701 F.3d at 894 (informants are "the nature of the beast in police investigations" and such realities do not rise to the level of outrageousness needed to support a claim of outrageous government conduct). As such, the Court finds the defendants' objections to be without merit.

With respect to the defendants' other arguments, the Court agrees with the Magistrate Judge's findings and will adopt those findings, which are determinative of the remaining issues. Therefore, the Court will adopt the Magistrate Judge's findings and recommendation in their entirety.

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation and Order (filing 80) are adopted.

2. The defendants' objections (filing 85 and filing 87) are overruled.

3. Gruttemeyer's Motion to Sever (filing 34) is denied.

4. The defendants' Motions to Dismiss Criminal Case For Outrageous Government Conduct (filing 36 and filing 43) are denied.

5. The defendants' Motions to Suppress (filing 38 and filing 44) are denied.

6. The defendants' Motions to Dismiss Count 7 (filing 40 and filing 42) are denied.

Dated this 10th day of May, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge